Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
          msullivan@faruqilaw.com
          klenahan@faruqilaw.com

Barbara Rohr SBN 273353
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAVAX SECURITIES LITIGATION | Case No. 3:13-CV-02796-CRB |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To:<br><br>ALL ACTIONS | Judge:  Hon. Charles R. Breyer<br>Hearing Date:  October 14, 2016<br>Time:  10:00 A.M.<br>Courtroom:  6, 17th Floor<br><br><u>CONSOLIDATED CLASS ACTION</u> |

1

## NOTICE OF MOTION AND MOTION

2          PLEASE TAKE NOTICE that on October 14, 2016, at 10:00 a.m., in Courtroom 6 on the

3    17th Floor before the Honorable Charles R. Breyer at the United States District Court for the

4    Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San

5    Francisco, CA 94102, Lead Plaintiff Khaled Khalafallah ("Lead Plaintiff") and Plaintiff Ron

6    Franklin (together with Lead Plaintiff "Plaintiffs") hereby moves for an order (i) preliminarily

7    approving the proposed settlement of this action; (ii) preliminarily certifying the proposed class for

8    purposes of settlement; (iii) approving the form and manner of giving notice of the proposed

9    settlement to the class; and (iv) scheduling a final approval hearing before the Court.  The grounds

10   for this motion are that the proposed settlement is within the range of what could be found to be

11   fair, reasonable, and adequate so that notice of its terms may be disseminated to members of the

12   class and a hearing for final approval of the proposed settlement may be scheduled.

13          This motion is based upon the Notice of Motion and Motion, the Memorandum of Points

14   and Authorities set forth below, the Stipulation and Agreement of Settlement dated September 7,

15   2016, filed simultaneously herewith (the "Stipulation"), the pleadings and records on file in this

16   action, and other such matters and argument as the Court may consider at the hearing of this

17   motion.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION....................................................................................i

STATEMENT OF ISSUES TO BE DECIDED..................................................................vii

SUMMARY OF THE ARGUMENT...................................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES........................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND......................................................1

    A.    Description of the Action ....................................................................................1

    B.    The Proposed Settlement ...................................................................................3

II.   ARGUMENT ...............................................................................................................4

    A.    The Settlement Should Be Preliminarily Approved.............................................4

        1.    The Proposed Settlement Is the Product of Arm's-Length Negotiations....5

        2.    The Proposed Settlement Has No Obvious Deficiencies ...........................6

        3.    The Settlement Does Not Unjustly Favor Any Settlement Class
            Members .........................................................................................6

        4.    The Proposed Settlement Is Within the Range of Reasonableness ............7

    B.    The Class Should Be Certified For Settlement Purposes .......................................8

        1.    The Proposed Settlement Class Meets the Requirements of Rule 23(a).....9

            a.    The Settlement Class Is Sufficiently Numerous.............................9

            b.    There Are Common Questions of Law and Fact..........................10

            c.    The Proposed Class Representative's Claims are Typical ...........10

            d.    The Proposed Class Representative Will Fairly and
               Adequately Protect the Interests of the Settlement Class.............11

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(3)............................11

            a.    Common Questions of Law and Fact Predominate Over
               Questions Affecting Only Individual Members of the Class ........11

            b.    A Class Action Is Superior to Other Methods of Adjudication ....12

        3.    The Court Should Appoint the Faruqi Firm as Class Counsel.................13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.      The Proposed Class Notice Should Be Approved .................................................. 13

D.      The Proposed Schedule Of Events ....................................................................... 14

III.    CONCLUSION ................................................................................................................ 15

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 13 2796 CRB**

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Altamirano v. Shaw Indus.*,
    2015 U.S. Dist. LEXIS 97098 (N.D. Cal. July 24, 2015) .......................................... vii, viii, 7

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (U.S. 1997) ................................................................................................12

*Angell v. City of Oakland*,
    2015 U.S. Dist. LEXIS 1037 (N.D. Cal. Jan. 5, 2015).....................................................6

*Bellinghausen v. Tractor Supply Co.*,
    303 F.R.D. 611 (N.D. Cal. 2014) .....................................................................................9

*Booth v. Strategic Realty Trust Inc.*,
    2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28, 2015).............................................9, 10

*In re Celera Corp. Secs. Litig.*,
    2015 U.S. Dist. LEXIS 42228 (N.D. Cal. Mar. 31, 2015) .......................................... vii, 4

*Chao v. Aurora Loan Servs., LLC*,
    2014 U.S. Dist. LEXIS 124575 (N.D. Cal. Sept. 5, 2014).............................................11

*Epstein v. MCA, Inc.*,
    179 F.3d 641 (9th Cir. 1999) ..........................................................................................13

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. Cal. 1989) ..................................................................................4

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ....................................................................................10, 11

*Harris v. Vector Mktg. Corp.*,
    2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011)..................................................5

*Hendricks v. Starkist Co*,
    2015 U.S. Dist. LEXIS 96390 (N.D. Cal. July 23, 2015) ..................................................7

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005)..................................................4

*Krzesniak v. Cendant Corp.*,
    2007 U.S. Dist. LEXIS 47518 (N.D. Cal. 2007) ..............................................................9

*In re Magma Design Automation Sec. Litig.*,
    2007 U.S. Dist. LEXIS 62641 (N.D. Cal. 2007) (Breyer, J.)........................................ viii, 9

*McCabe v. Six Continents Hotels, Inc.*,
    2015 U.S. Dist. LEXIS 85084 (N.D. Cal. June 30, 2015)............................................. vii, 6

*Nielson v. Sports Auth.*,
  2013 U.S. Dist. LEXIS 106018 (N.D. Cal. July 26, 2013) ............................................. viii, 9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ........................................................................................... 13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ......................................................................................................... 13

*In re Portal Software, Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 51794 (N.D. Cal. 2007) ........................................................... ix, 14

*Ramirez v. Ghilotti Bros.*,
  2014 U.S. Dist. LEXIS 56038 (N.D. Cal. Apr. 21, 2014) (Breyer, J.) .................................... 6

*Rubio-Delgado v. Aerotek, Inc.*,
  2015 U.S. Dist. LEXIS 75300 (N.D. Cal. June 10, 2015) .................................................... 8

*Ruch v. Am Retail Grp., Inc.*,
  2016 U.S. Dist. LEXIS 39629 (N.D. Cal. Mar. 24, 2016) .......................................... viii, 6, 7

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................... viii, 9

*Swain v. Ryder Integrated Logistics, Inc.*,
  2012 U.S. Dist. LEXIS 93215 (N.D. Cal. 2012) (Breyer, J.) .................................... vii, 5, 8, 9

*In re VeriSign, Inc. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 10438 (N.D. Cal. 2005) ........................................................... 10, 12

*Villegas v. J.P. Morgan Chase & Co.*,
  2012 U.S. Dist. LEXIS 166704 (N.D. Cal. Nov. 20, 2012) .................................................. 6

*In re Zynga Sec. Litig.*,
  2015 U.S. Dist. LEXIS 145728 (N.D. Cal. Oct. 27, 2015) .......................................... *passim*

**Statutes**

15 U.S.C. § 78u-4(a)(7) .................................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 23(a) ................................................................................................ 9, 10, 11

Fed. R. Civ. P. 23(g) ............................................................................................. viii, 11, 13

Svetlana Starykh and Stefan Boettrich,
  *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*
  (NERA 2016) ..................................................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the proposed settlement should be preliminarily approved.

2.    Whether the proposed form and manner of notice to the Class should be approved.

3.    Whether the proposed class should be preliminarily certified for settlement purposes.

**SUMMARY OF THE ARGUMENT**

After nearly three years of intensive litigation, Plaintiffs seek preliminary approval of a proposed settlement of this putative class action (the "Action") for $4,500,000 (the "Settlement").[1] The Settlement represents a certain and substantial recovery for the members of the proposed Settlement Class (the "Class Members") and clearly "falls within the range of possible approval." *In re Celera Corp. Secs. Litig.*, 2015 U.S. Dist. LEXIS 42228, at *9 (N.D. Cal. Mar. 31, 2015). Furthermore, the Settlement "(1) . . . appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, [and] (3) does not improperly grant preferential treatment to class representatives or segments of the class[.]" *In re Zynga Sec. Litig.*, 2015 U.S. Dist. LEXIS 145728, at *32 (N.D. Cal. Oct. 27, 2015). The terms of the Settlement were reached with the assistance of experienced Mediator Jed Melnick at an in-person mediation session and through the course of numerous conference calls between the Settling Parties. *See Swain v. Ryder Integrated Logistics, Inc.*, 2012 U.S. Dist. LEXIS 93215, at *2 (N.D. Cal. 2012) (Breyer, J.) ("The assistance of an experienced mediator in the settlement process supports the Court's conclusion that the settlement is non-collusive."). The Settlement releases only those claims based upon the same factual predicate as the allegations in this Action, the *cy pres* beneficiary has a reasonable nexus to the claims in this Action, and counsel is requesting no more than the Ninth Circuit benchmark in attorneys' fees. *See McCabe v. Six Continents Hotels, Inc.*, 2015 U.S. Dist. LEXIS 85084, at *21-24 (N.D. Cal. June 30, 2015). Third, the Net Settlement Fund will be distributed pursuant to a Plan of Allocation developed in consultation with an expert, and Plaintiffs will receive their *pro rata* share of the fund. *See Altamirano v. Shaw Indus.*, 2015 U.S. Dist. LEXIS 97098, at *22 (N.D. Cal.

---

[1]    All capitalized terms that are not otherwise defined herein shall have the same meaning as those provided in the Stipulation and Agreement of Settlement dated as of September 7, 2016 (the "Stipulation"), filed concurrently herewith.  All references to the "Gonnello Decl." are to the Declaration of Richard W. Gonnello in Support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement filed in support hereof.  All quotations and citations are omitted unless otherwise noted.

1  July 24, 2015).  Finally, the Settlement Amount is within the range of possible approval in light of

2  the substantial risks and expenses of future litigation which could result in little recovery or no

3  recovery at all.  *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 39629, *37 (N.D. Cal.

4  Mar. 24, 2016).

5       Plaintiffs also request that the settlement Class be preliminarily certified for settlement

6  purposes.  "As in almost all lawsuits by shareholders of public companies, the investors in this case

7  easily satisfy the requirements of Rule 23."  *In re Magma Design Automation Sec. Litig.*, 2007 U.S.

8  Dist. LEXIS 62641, at *2 (N.D. Cal. 2007) (Breyer, J.).  As set forth herein, the Action readily

9  satisfies Rule 23(a) because (a) the Class has over 100 members; thus, joining all Class Members

10  would be impracticable; (b) Class Members share common questions of law and fact, including the

11  alleged falsity of Defendants' (defined below) statements and omissions during the Class Period, as

12  well as their scienter; (c) Plaintiffs' claims are typical of the Class's claims because they allegedly

13  suffered damages as a result of their purchases of Dynavax Technologies Corporation ("Dynavax"

14  or the "Company") common stock; and (d) Plaintiffs have demonstrated their adequacy by litigating

15  this Action for three years and obtaining this favorable result.  *See Staton v. Boeing Co.*, 327 F.3d

16  938, 953 (9th Cir. 2003).  This Action also satisfies the requirements of Rule 23(b)(3) because the

17  same set of operative facts applies to each Class Member (*i.e.* each Class Member purchased

18  Dynavax common stock at prices alleged to be artificially inflated as a result of Defendants' false

19  and misleading statements and/or omissions and was allegedly harmed when the undisclosed facts

20  came to light) and the Class Members are too numerous to bring individual actions.  *See Nielson v.

21  Sports Auth.*, 2013 U.S. Dist. LEXIS 106018, at *19 (N.D. Cal. July 26, 2013).  In addition to

22  certifying the Class for settlement purposes, Plaintiffs also respectfully request that the Court

23  appoint Faruqi & Faruqi, LLP ("Lead Counsel" or the "Faruqi Firm") as Class Counsel for the

24  Action.  *See* Fed. R. Civ. P. 23(g).

25       Plaintiffs request that the Court approve the form and manner of notice to be provided to

26  proposed Class Members.  The Settlement Notice and Publication Notice include all of the

27  information that is required by Due Process, Rule 23(c)(2)(B), Rule 23(e), and the Private

28  Securities Litigation Reform Act of 1995, (the "PSLRA"), 15 U.S.C. § 78u-4, and are to be made

available to Class Members through the standard methods of mailing, publication, and a designated website.  *See, e.g.*, *In re Portal Software*, *Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal. 2007) (dissemination of notice to all reasonably identifiable class members and published summary notice approved as best practical).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Plaintiffs, on behalf of themselves and the putative Class, and defendants Dynavax, Dino Dina, and J. Tyler Martin (collectively, the "Dynavax Defendants") and Mark Kessel, Symphony Capital Partners, L.P., Symphony Capital GP, L.P., Symphony GP, LLC, and Symphony Strategic Partners, LLC (collectively, the "Symphony Defendants" and together with the Dynavax Defendants, "Defendants")[2] have reached a proposed settlement of this Action for $4,500,000 that, if approved, will resolve all claims in the Action.  Plaintiffs respectfully submit this memorandum of law in support of their motion and request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order").  The Preliminary Approval Order will, among other things, (1) preliminarily approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; (3) appoint Plaintiffs as Class Representatives and the Faruqi Firm as Class Counsel; (4) approve the form and manner of giving notice of the Settlement to the Class; and (5) set a date for the Final Fairness Hearing.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.    Description of the Action**

This Action arises out of the Dynavax Defendants' allegedly misleading statements concerning the Company's Biologic License Application ("BLA") for its Hepatitis B vaccine, HEPLISAV, and the Symphony Defendants' sales of Dynavax common stock while allegedly in possession of confidential, inside information.

Commencing on June 18, 2013, two securities class action complaints were filed against the Dynavax Defendants bringing claims for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission (the "SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

On August 19, 2013, several plaintiffs moved to be appointed as lead plaintiff in accordance with the PSLRA and to have their selection of counsel appointed as lead counsel.  ECF Nos. 11-20.[3]  On August 22, 2013, the Court consolidated the two actions and re-captioned the Action as *In*

---

[2]    Plaintiffs and Defendants are defined herein as the "Settling Parties."
[3]    All docket references are to the action captioned *In re Dynavax Technologies Corporation Securities Litigation*, 3:13-CV-02796-CRB.

*re Dynavax Technologies Corp. Sec. Litig.*, 3:13-CV-02796-CRB.  ECF No. 24.  Then, on September 27, 2013, the Court appointed Khaled Khalafallah as Lead Plaintiff and approved the Faruqi Firm as Lead Counsel.  ECF No. 39.

On November 12, 2013, Lead Plaintiff filed a Consolidated Class Action Complaint adding Mark Kessel as a defendant.  ECF No. 47.  On April 7, 2014, Lead Plaintiff filed an Amended Consolidated Class Action Complaint adding the Symphony entities as defendants and Ron Franklin as a plaintiff.  ECF No. 65.  After partially briefing a second motion to dismiss, pursuant to a subsequent agreement among the parties, Plaintiffs filed the Second Amended Class Action Complaint (the "SAC") on September 10, 2014.  ECF No. 93.

The SAC alleges that the Dynavax Defendants violated the Exchange Act by making three categories of misleading statements and omissions during the Class Period: (a) Dynavax concealed that it had not validated its manufacturing processes and controls prior to filing its BLA for HEPLISAV with the U.S. Food and Drug Administration ("FDA"); (b) Dynavax concealed that it had received a Form 483 following the FDA's pre-approval inspection of one of Dynavax's manufacturing facilities; and (c) after the FDA denied approval of the BLA, Dynavax misrepresented that the FDA left the door completely open for approval, when in fact, significant obstacles to approval remained.  The SAC also alleges that the Symphony Defendants violated the Exchange Act by engaging in insider trading, selling 6 million shares of Dynavax common stock while in possession of the Form 483.  As alleged in the SAC, the truth regarding the Dynavax Defendants' misleading statements was revealed in two separate disclosures.  First, on February 25, 2013, the FDA issued a Complete Response Letter denying approval of the BLA due to, among other things, deficiencies in Dynavax's process validation program and manufacturing controls and facilities related to the assurance of the quality of the commercial product.  Several months later, on June 10, 2013, Dynavax announced that the FDA would require additional patients in the safety database before it will grant approval of the BLA.  The fraudulent activity alleged in the SAC and later disclosed to the public caused investors who purchased Dynavax common stock to suffer significant damages.

On February 20, 2105, Senior District Judge Charles R. Breyer held a hearing during which he denied in part and granted in part Defendants' motions to dismiss the SAC.  ECF No. 118.  The Court upheld the insider trading and control person claims against the Symphony Defendants and upheld the securities fraud and control person claims against the Dynavax Defendants for statements contained in seven different paragraphs in the SAC.[4]  *Id.*  On April 6, 2015 Defendants filed their Answers to the SAC (ECF Nos. 126, 127); and on April 17, 2015, the Symphony Defendants (minus Kessel) filed a motion to certify the motion to dismiss order for interlocutory appeal (ECF Nos. 129, 130), which motion was subsequently removed from the Court's calendar after the parties agreed to mediation.  Defendants continue to deny that they committed any acts or omissions giving rise to any liability and/or violations of the law.  *See* Stipulation at 3.

Several months later, the Settling Parties engaged Jed Melnick of Judicial Arbitration Mediation Services ("JAMS"), a well-respected and highly experienced mediator, to assist them in exploring a potential resolution of the Action.  On August 4, 2015, the Settling Parties met with Mr. Melnick for an arm's-length mediation session.  During the session, the parties extensively debated the strengths and weaknesses of Plaintiffs' claims and the defenses available to Defendants; however, the Settling Parties were not able to reach an agreement during the session.  To facilitate settlement, after the mediation session, Defendants agreed to produce certain categories of documents to Plaintiffs in order to shed light on their position.  Lead Counsel reviewed several thousand pages of documents, and then engaged in several mediation discussions with Defendants' Counsel to further discuss the merits of the claims.  On April 18, 2016, the Settling Parties were able to reach an agreement in principle to settle the claims against Defendants and then worked over the course of several months to finalize the terms of the Stipulation.

## B.   The Proposed Settlement

The Settlement provides that the Defendants will cause to be paid the amount of $4,500,000, in cash, to settle all claims in the Action.  The Settlement Amount will be placed into an interest-bearing escrow account and, after paying attorneys' fees and expenses approved by the Court, and other costs of settlement, the Net Settlement Fund will be distributed to Authorized Claimants.  In

---

[4]     The statements that were sustained are those found in ¶¶ 76, 89, 90, 103, 105, 110, 113.

1   exchange for the payment of the Settlement Amount, Plaintiffs and the settlement Class will release

2   all Settled Claims against the Defendant Releasees.

3        Plaintiffs entered into this Settlement with a full and comprehensive understanding of the

4   strengths and weaknesses of the claims in the SAC, which are based on Lead Counsel's extensive

5   experience with securities litigation, the investigation performed in connection with the filing of the

6   amended complaints, the legal research conducted in connection with the motions to dismiss, and

7   the numerous discovery documents reviewed by Lead Counsel.  Plaintiffs believe that the claims

8   asserted in this Action have merit and that the evidence developed to date supports the claims.

9   Plaintiffs and Lead Counsel recognize, however, the expense and length of continued proceedings

10  necessary to prosecute the Action through trial and possible appeals, as well as the uncertain

11  outcome of any litigation, especially in complex actions such as this.  Plaintiffs and Lead Counsel

12  also are mindful of the inherent problems of proof under and possible defenses to the securities law

13  violations asserted in the Action.  Plaintiffs and Lead Counsel believe the Settlement set forth in the

14  Stipulation confers substantial benefits upon, and thus, is in the best interest of, the Class.

15  **II.    ARGUMENT**

16      **A.    The Settlement Should Be Preliminarily Approved**

17      Fed. R. Civ. P. 23(e) provides that any compromise of a class action must receive court

18  approval.  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

19  complex class action litigation is concerned."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS

20  13555, at *9 (C.D. Cal. June 10, 2005).  "[T]here is an overriding public interest in settling and

21  quieting litigation. This is particularly true in class action suits. . . ."  *Franklin v. Kaypro Corp.*, 884

22  F.2d 1222, 1229 (9th Cir. Cal. 1989).

23      The settlement approval process entails two steps: "(1) preliminary approval of the

24  settlement; and (2) final approval of the settlement at a fairness hearing following notice to the

25  class."  *Celera*, 2015 U.S. Dist. LEXIS 42228, at *9.  "Preliminary approval is appropriate where

26  the proposed settlement is neither illegal nor collusive and is within the range of possible approval."

27  *Id.*  Thus, at this juncture, the court should preliminarily approve a settlement and notice to the class

28  if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive

1  negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to

2  class representatives or segments of the class, [4] and falls within the range of possible approval."

3  *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *32.

**1.     The Proposed Settlement Is the Product of Arm's-Length Negotiations**

5       The first factor considers the method by which the parties arrived at the settlement.  "An

6  initial presumption of fairness is usually involved if the settlement is recommended by class counsel

7  after arm's-length bargaining."  *Harris v. Vector Mktg. Corp.*, 2011 U.S. Dist. LEXIS 48878, at *24

8  (N.D. Cal. Apr. 29, 2011).  Here, the parties agreed to engage in a mediation session after, *inter*

9  *alia*, (1) Lead Counsel conducted an investigation into the facts alleged in the Action; (2) Lead

10  Counsel drafted three amended complaints; (3) the Settling Parties engaged in three rounds of

11  motion to dismiss briefing; and (4) Defendants filed answers to the SAC and the Symphony

12  Defendants filed a motion for reconsideration.  Thus, the Settling Parties entered negotiations with a

13  comprehensive understanding of the strengths and weaknesses of their positions and the procedural

14  hurdles facing this Action.  *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *33 ("For the parties to

15  have brokered a fair settlement, they must have been armed with sufficient information about the

16  case to have been able to reasonably assess its strengths and value.").

17       The negotiations took place in a formal, in-person session with the assistance of a well-

18  respected mediator with significant experience mediating securities fraud class actions.  *Swain*,

19  2012 U.S. Dist. LEXIS 93215, at *2 ("The assistance of an experienced mediator in the settlement

20  process supports the Court's conclusion that the settlement is non-collusive.").  The parties

21  vigorously debated their positions but they were unable to come to an agreement: Lead Counsel

22  reviewed thousands of pages of discovery documents and the parties engaged in numerous

23  teleconferences with Mr. Melnick over the course of the following months before reaching a

24  resolution.  Furthermore, counsel is experienced in this type of litigation.  Lead Counsel is a

25  nationally-recognized law firm with substantial experience prosecuting securities class actions.  *See*

26  Gonnello Decl., Ex. 2.  Additionally, Defendants' Counsel, Cooley LLP and Shearman & Sterling

27  LLP, are renowned for their securities litigation practices.  This Court has found that this factor

28  weighs heavily in support of approval, explaining that "[w]hen class counsel is experienced and

1  supports the settlement, and the agreement was reached after arm's length negotiations, courts

2  should give a presumption of fairness to the settlement." *Ramirez v. Ghilotti Bros.*, 2014 U.S. Dist.

3  LEXIS 56038, at *3 (N.D. Cal. Apr. 21, 2014) (Breyer, J.).  Having settled numerous securities

4  class actions, Counsel believes that the terms of the Settlement are fair, adequate, and reasonable.

5  **2.    The Proposed Settlement Has No Obvious Deficiencies**

6  The Court must next consider whether the proposed Settlement has any obvious

7  deficiencies.  Courts often look at the class definition, the scope of the release, the *cy pres*

8  beneficiaries, and whether the requested attorneys' fees are reasonable.  *See McCabe v. Six*

9  *Continents Hotels, Inc.*, 2015 U.S. Dist. LEXIS 85084, at *21-24 (N.D. Cal. June 30, 2015).

10  Here the Class includes all investors who purchased common stock during the time in which

11  Defendants were purportedly committing securities fraud and who allege to have been damaged as

12  a result.  The Settling Parties were careful to exclude all parties related to Defendants and any

13  Person who may have benefitted from Defendants' actions.  Next, the "Settlement Agreement's

14  release language appropriately releases only claims based on the same factual predicate as the

15  underlying claims in this case" and only claims based upon the purchase or acquisition of Dynavax

16  common stock during the Class Period.  *Ruch*, 2016 U.S. Dist. LEXIS 39629, at *33.  "Such a

17  narrow release warrants preliminary approval."  *Id.*; *see also Angell v. City of Oakland*, 2015 U.S.

18  Dist. LEXIS 1037, at *23 (N.D. Cal. Jan. 5, 2015).

19  Lastly, Lead Counsel is requesting attorneys' fees not to exceed 25% of the Net Settlement

20  Fund and up to $150,000 in litigation expenses. "In common fund cases such as this, [the Ninth

21  Circuit has] established twenty-five percent (25%) of the common fund as the benchmark award for

22  attorney fees." *Villegas v. J.P. Morgan Chase & Co.*, 2012 U.S. Dist. LEXIS 166704, at *18 (N.D.

23  Cal. Nov. 20, 2012).  Lead Counsel respectfully submits that the requested award is reasonable and

24  should not weigh against preliminary approval. *See Ruch*, 2016 U.S. Dist. LEXIS 39629, at *35.

25  **3.    The Settlement Does Not Unjustly Favor Any Settlement Class Members**

26  Under the third factor the Court examines whether the settlement grants preferential

27  treatment to any Class Member.  Here, Lead Counsel enlisted the help of a damages expert to

28  prepare a Plan of Allocation that is designed to distribute a *pro rata* share of the Net Settlement

1   Fund to Authorized Claimants based upon their claimed losses.  Since the "[P]lan of [A]llocation

2   submitted to the Court compensates class members in a manner generally proportionate to the harm

3   they suffered on account of [the] alleged misconduct[,]" this factor supports approval.  *Altamirano*,

4   2015 U.S. Dist. LEXIS 97098, at \*22.  While Plaintiffs will receive a distribution from the Net

5   Settlement Fund in accordance with the Plan of Allocation, they may also seek reimbursement of

6   their expenses incurred as a result of the activities related to their representation of the Class, as

7   authorized by the PSLRA.  "The Ninth Circuit has recognized that service awards to named

8   plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable."

9   *Hendricks v. Starkist Co*, 2015 U.S. Dist. LEXIS 96390, at \*17 (N.D. Cal. July 23, 2015).

10          **4.      The Proposed Settlement Is Within the Range of Reasonableness**

11          "To evaluate the range of possible approval criterion, which focuses on substantive fairness

12   and adequacy, courts primarily consider plaintiff's expected recovery balanced against the value of

13   the settlement offer."  *Zynga*, 2015 U.S. Dist. LEXIS 145728, at \*39.  Thus, the Court may preview

14   the factors that ultimately inform final approval: (1) the strength of plaintiff's case; (2) the risk,

15   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

16   status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

17   completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the

18   presence of a governmental participant; and (8) the reaction of the class members to the proposed

19   settlement.  *See Ruch*, 2016 U.S. Dist. LEXIS 39629, \*37.

20          Here, all of the factors support preliminary approval.  If the Action were to continue,

21   Plaintiffs would face numerous obstacles and risks.  While Plaintiffs have always believed that their

22   positions have merit, Defendants have raised numerous challenges and adamantly deny any

23   wrongdoing.  Defendants' positions may prevail on summary judgment, or the court may deny class

24   certification.  If the Action were to survive those hurdles, the outcome of trial would be uncertain

25   and may leave the Class with no recovery at all.  As well, further litigation would involve

26   considerable costs and a significant investment of time by the parties and their respective counsel

27   and would burden the resources of the Court.  In contrast to these risks and challenges, the

28   Settlement provides an immediate and certain benefit to the Class.

7

1    In addition to providing the Class with a prompt recovery, Plaintiffs submit that the

2    Settlement Amount is a very good result, constituting a material percentage of the likely provable

3    damages suffered by the Class.  It is currently estimated that if Class Members submit claims for

4    100% of the shares eligible for distribution, the average distribution per share of common stock will

5    be approximately $0.05 before deduction of Court-approved fees and expenses.  If Plaintiffs were to

6    prevail on each of the claims in the CAC at trial, the damages per share of common stock would be

7    approximately $1.88.  The Settlement Amount is 2.6% of the maximum damages Plaintiffs' expert

8    estimated the Class sustained as a result of Defendants' alleged fraudulent activity.  This is much

9    higher than the median ratio of settlement amounts to investor losses for 2015 which NERA

10   Economic Consulting determined was 1.6%.  *See* Gonnello Decl. Ex. 1 at 34, Svetlana Starykh and

11   Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*

12   (NERA 2016).  As one court in this District recently noted, "[a]lthough the proposed settlement is

13   only a small percentage of the total expected recovery at trial, there is no reason, at least in theory,

14   why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

15   single percent of the potential recovery."  *Rubio-Delgado v. Aerotek, Inc.*, 2015 U.S. Dist. LEXIS

16   75300, at *29 (N.D. Cal. June 10, 2015).

17   In regard to the other factors, as set forth more fully above, the Settlement was reached after

18   three years of hard-fought litigation and is supported by experienced counsel.  Finally, there is no

19   governmental entity and notice has not been distributed to the Class, so these factors are irrelevant.

20   Thus, the Settlement is within the range of possible approval and warrants preliminary

21   approval to permit Class Members to at least consider the terms of the Settlement.

22   **B.       The Class Should Be Certified For Settlement Purposes**

23   Plaintiffs seek approval the following Settlement Class: Lead Plaintiff and Ron Franklin as

24   well as all persons who purchased or otherwise acquired Dynavax common stock during the period

25   between April 26, 2012 and June 10, 2013, both dates inclusive, and who allege to have been

26   damaged thereby.  *See* Stipulation ¶1.

27   "Where, as here, the Parties reach a settlement agreement prior to class certification, a

28   district court must first assess whether a class exists for settlement purposes."  *Swain*, 2012 U.S.

1  Dist. LEXIS 93215, at *3.  In order to obtain class certification, a plaintiff must establish the

2  requirements of Rule 23(a) and one of the three subsections of Rule 23(b).  *See Zynga*, 2015 U.S.

3  Dist. LEXIS 145728, at *24.  Rule 23(a) empowers a court to certify a class when:  (1) the class is

4  so numerous that joinder of all members is impracticable; (2) there are questions of law or fact

5  common to the class; (3) the claims or defenses of representative parties are typical of the claims or

6  defenses of the class; and (4) the representative parties will fairly and adequately protect the

7  interests of the class.  *See Staton*, 327 F.3d at 953.  In addition, a class may be certified under Rule

8  23(b)(3) if the Court finds that: (1) "the questions of law or fact common to class members

9  predominate over any questions affecting only individual members[,]", and (2) "a class action is

10  superior to other available methods for fairly and efficiently adjudicating the controversy[.]"

11  *Nielson v. Sports Auth.*, 2013 U.S. Dist. LEXIS 106018, at *19 (N.D. Cal. July 26, 2013).  "As in

12  almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the

13  requirements of Rule 23." *Magma*, 2007 U.S. Dist. LEXIS 62641, at *2.

14         **1.**       **The Proposed Settlement Class Meets the Requirements of Rule 23(a)**

15                **a.**       **The Settlement Class Is Sufficiently Numerous**

16         Under Rule 23(a) a class may be certified if it is "so numerous that joinder of all members is

17  impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts have held that numerosity may be presumed

18  when the class comprises forty or more members." *Krzesniak v. Cendant Corp.*, 2007 U.S. Dist.

19  LEXIS 47518, at *18 (N.D. Cal. 2007).  Although, the exact size of the class need not be known,

20  when "general knowledge and common sense indicate that it is large, the numerosity requirement is

21  satisfied." *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014).

22         During the Class Period, Dynavax common stock was traded on the NASDAQ exchange.

23  *See* ¶143.  As of February 28, 2013, there were more than 182 million shares of Dynavax common

24  stock outstanding, owned by thousands of people.  Thus, the Class is sufficiently numerous because

25  joinder would be impracticable. *See Booth v. Strategic Realty Trust Inc.*, 2015 U.S. Dist. LEXIS

26  84143, at *26 (N.D. Cal. June 28, 2015) ("[S]ecurities fraud cases fit Rule 23 like a glove.").

27

28

### b.   There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." "Courts regularly hold that commonality is plainly satisfied in a securities case where the alleged misrepresentations in the prospectus relate to all the investors, because the existence and materiality of such misrepresentations obviously present important common issues." *Booth*, 2015 U.S. Dist. LEXIS 84143, at *10; *In re VeriSign, Inc. Sec. Litig.*, 2005 U.S. Dist. LEXIS 10438, at *17 (N.D. Cal. 2005) ("[C]ommonality is easily met in cases where class members all bought or sold the same stock in reliance on the same disclosures").

In this case, the overarching issue shared by all members of the proposed settlement Class is whether Defendants violated the Exchange Act and the rules promulgated thereunder in connection with Plaintiffs' factual allegations discussed above. *See* ¶156. This issue involves common questions because each Class Member has to prove the same elements to establish Defendants' liability and thus the low hurdle of Rule 23(a)(2) is satisfied. *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at *26-27 (finding commonality when the questions common to the class were the elements of a securities fraud claim).

### c.   The Proposed Class Representative's Claims are Typical

A class may be certified if the claims of the representative parties are typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' claims arise from the same events and alleged misconduct and are based on the same legal theories as those of the proposed settlement Class. Here, Plaintiffs claim that (a) Defendants violated §§ 10(b), 20A, and 20(a) of the Exchange Act by issuing false and misleading statements and engaging in insider trading; (b) Plaintiffs and other settlement Class Members purchased Dynavax common stock at artificially inflated prices based on those false and misleading statements and were damaged thereby; and (c) by proving Plaintiffs' own claims, Plaintiffs would prove the claims of the settlement Class Members. Thus, there is a sufficient nexus between Plaintiffs' claims and the Class's claims to satisfy Rule 23(a)(3).

1

2

        **d.**      **The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class**

3        Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

4    interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal

5    adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other

6    class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously

7    on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

8        Plaintiffs' interests in this case are directly aligned with those of the other members of the

9    proposed settlement Class. Plaintiffs claim that they suffered damages from the same alleged

10   conduct as the other members of the Class, and through those claims seeks the same recovery from

11   Defendants. Accordingly, Plaintiffs are more than adequate representatives of the settlement Class.

12       Plaintiffs' counsel is qualified, experienced, and able to conduct this litigation. Indeed,

13   Lead Counsel, a national law firm, has successfully litigated numerous securities fraud and complex

14   class action cases. *See* Gonnello Decl., Ex. 2. Lead Counsel has devoted significant effort to

15   identifying and investigating the potential claims in this Action and fought vigorously to preserve

16   those claims through three rounds of motion to dismiss briefing. *See* Fed. R. Civ. P. 23(g)(1)(A).

17   Based on the foregoing, Plaintiffs are adequate representatives for the settlement Class and Lead

18   Counsel satisfies Rule 23(g).

19       **2.**      **The Proposed Settlement Class Satisfies Rule 23(b)(3)**

20

        **a.**      **Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class**

21

22       "[T]he predominance requirement tests whether proposed classes are sufficiently cohesive

23   to warrant adjudication by representation." *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *29. Rule

24   23(b)(3) does not require plaintiffs "to prove that each element of their claim is susceptible to class-

25   wide proof." *Chao v. Aurora Loan Servs., LLC*, 2014 U.S. Dist. LEXIS 124575, at *16 (N.D. Cal.

26   Sept. 5, 2014).

27       Here, the common questions of law and fact described above predominate over any

28   individual questions. The same set of operative facts applies to each Class Member (*i.e.* each Class

1    Member purchased or otherwise acquired Dynavax common stock during the settlement Class

2    Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading

3    statements and/or omissions and each Class Member was allegedly harmed when the undisclosed

4    facts came to light).  Under similar circumstances, in *Zynga*, the court found that predominance was

5    satisfied when "each class member purchased and/or acquired Zynga common stock during the

6    Settlement Class Period and suffered losses in their shares' value as a result of Defendants'

7    misrepresentations that artificially inflated the prices[.]"  2015 U.S. Dist. LEXIS 145728, at *29-30.

8                     **b.      A Class Action Is Superior to Other Methods of Adjudication**

9          With respect to the superiority prong of Rule 23(b)(3), four factors should be considered: (i)

10   the interest of class members in individually prosecuting separate actions; (ii) the extent of any

11   litigation already commenced by class members; (iii) the desirability of concentrating the litigation

12   in the particular forum; and (iv) the difficulties in management of a class action.  *See Amchem*

13   *Prods. v. Windsor*, 521 U.S. 591, 616 (U.S. 1997). Courts have recognized that "[c]lass actions are

14   particularly well-suited in the context of securities litigation, wherein geographically dispersed

15   shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy

16   corporate defendants."  *Verisign*, 2005 U.S. Dist. LEXIS 10438, at *31-32.

17         All four factors are satisfied in this case.  First, prosecution of this lawsuit on a class action

18   basis will be more efficient than adjudication of the numerous individual shareholder claims

19   because the shareholders are geographically dispersed and have relatively small claims.  *See id.* at

20   *33 (finding class action superior when "[m]illions of VeriSign shares were traded daily during the

21   Class Period, and over a billion shares were traded during the Class Period.").

22         Second, Plaintiffs and Lead Counsel have already invested significant resources thus far in

23   preserving and prosecuting the claims asserted in the SAC.  Any additional individual litigation

24   would simply be duplicative of Plaintiffs' efforts.  As well, certification is the superior method to

25   facilitate the resolution of the Class's claims against Defendants because, absent certification,

26   Defendants would not be able to obtain a Class-wide release and thus would have little incentive to

27   enter into a settlement.  Thus, Plaintiffs have satisfied the superiority requirement of Rule 23(b)(3)

28   and this Court should certify the proposed settlement Class.

### 3.     The Court Should Appoint the Faruqi Firm as Class Counsel

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).

Plaintiffs respectfully request that the Court appoint the Faruqi Firm as Class Counsel for the

settlement Class.  The firm is knowledgeable about the applicable law, experienced in handling

class actions, has performed substantial work in pursuing the claims and in reaching a settlement,

and has committed the necessary resources to representing the settlement Class.  *See id.*

### C.     The Proposed Class Notice Should Be Approved

Pursuant to the Fifth Amendment, "due process for class action plaintiffs requires notice

plus an opportunity to be heard and participate in the litigation[.]"  *Epstein v. MCA, Inc.*, 179 F.3d

641, 649 (9th Cir. 1999).  In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that due

process is satisfied "where a fully descriptive notice is sent first-class mail to each class member,

with an explanation  of the right to opt out[.]"  472 U.S. 797, 812 (1985).

As well, "[f]or any class certified under Rule 23(b)(3), class members must be afforded the

best notice practicable under the circumstances, which includes individual notice to all members

who can be identified through reasonable effort."  *Zynga*, 2015 U.S. Dist. LEXIS 145728, at *48.

Under this standard, the notice must state the following in plain language: (i) the nature of the

action; (ii) the definition of the class; (iii) the class claims, issues, or defenses; (iv) that a class

member may enter an appearance through an attorney; (v) that the court will exclude from the class

any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii)

the binding effect of a class judgment on members.  *Id.*  Rule 23(e) requires notice that describes

"the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate

and to come forward and be heard."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946

(9th Cir. 2015).  Furthermore, the PSLRA requires that the notice contain (i) a statement of the

recovery; (ii) a statement of the potential outcome of the case; (iii) a statement of attorneys' fees

and costs; (iv) identification of the lawyers; (v) reasons for settlement; (vi) other information the

court requires; and (vii) a cover page summarizing that information.  *See* 15 U.S.C. § 78u-4(a)(7).

Here, the Settlement Notice, which along with the Proof of Claim form, will be sent by U.S.

mail to Class Members and will be available on the website www.DynavaxSecuritiesLitigation.

1   com, and the Publication Notice, which will be published in *Investor's Business Daily* and posted

2   by *PR Newswire*, have been carefully drafted to notify the Class of the terms of the Settlement, the

3   Class Members' rights in connection with the Settlement, and the date of the Final Fairness Hearing

4   in compliance with Rules 23(c)(2) and 23(e), the PSLRA, and due process.  Indeed, the content of

5   the Settlement Notice includes (i) the case caption; (ii) a description of the claims in the Action;

6   (iii) a description of the settlement Class; (iv) the names of counsel for the settlement Class; (v) the

7   amount of attorneys' fees and expenses that will be requested by Lead Counsel; (vi) the Final

8   Fairness Hearing date; (vii) a description of the settlement Class Members' opportunity to appear at

9   the hearing; (viii) a statement of the deadline for filing objections to and exclusions from the

10  Settlement; (ix) the consequences of exclusion; (x) the consequences of remaining in the settlement

11  Class; and (xi) the manner in which to obtain more information.

12          The parties have agreed to use the traditional methods for notifying the Class Members:

13  notification by mail and by publication by wire service and in a national newspaper focusing on

14  investors.  This manner of providing notice represents the best notice practicable under the

15  circumstances, and satisfies the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *In*

16  *re Portal Software*, *Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 51794, at *18-19 (N.D. Cal. 2007)

17  (dissemination of notice to all reasonably identifiable class members and published summary notice

18  approved as best practical).  Furthermore, Garden City Group, LLC ("GCG") has been retained to

19  administer notice of the Settlement.  GCG has agreed to cap administration expenses at $225,000.

20  These administration expenses will amount to only $0.002 per share of common stock, which is a

21  very reasonable amount given the high quality GCG's services.  Accordingly, Plaintiffs respectfully

22  request that the Court approve the Notices and the procedures for their dissemination.

23          **D.     The Proposed Schedule Of Events**

24          No later than twenty (20) business days after entry of the Preliminary Approval Order (the

25  "Notice Date"), the Claims Administrator will notify Class Members of the Settlement by mailing a

26  copy of the Settlement Notice and Proof of Claim form, substantially similar to the form attached as

27  Exhibits A-1 & A-2 to the Stipulation, and will post a copy of the Settlement Notice and Proof of

28  Claim form on the website established for the Action.  Then, not later than seven (7) calendar days

after mailing of the Settlement Notice, the Publication Notice shall be published once in a national edition of *Investor's Business Daily* and posted on *PR Newswire*.

In connection with preliminary approval of the Settlement, the Court must set notice and objection deadlines.  The Settling Parties respectfully propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Settlement Notice to Class Members and posting the Settlement Notice on website ("Notice Date") | 20 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Publication Notice | 10 calendar days after the Notice Date |
| Filing proof of mailing and publication of Notices | 40 calendar days before the Final Fairness Hearing |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | 40 calendar days before the Final Fairness Hearing |
| Response deadline for Objections and Exclusions | 25 calendar days before the Final Fairness Hearing |
| Filing of reply memoranda in response to any objection | 7 calendar days before the Final Fairness Hearing |
| Final Fairness Hearing | The week of January 27, 2017, or at the Court's earliest convenience thereafter (at least 100 days after entry of the Preliminary Approval Order) |
| Deadline for submitting Proofs of Claim | 75 calendar days after the Notice Date |

## III.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court (a) preliminarily approve the proposed Settlement and schedule a Final Fairness Hearing; (b) preliminarily certify the proposed settlement Class, appoint Plaintiffs as settlement Class Representatives and the Faruqi Firm as settlement Class Counsel; and (c) approve the proposed forms of Notice and the proposed Notice plan.

Dated: September 8, 2016                    **FARUQI & FARUQI, LLP**

By: */s/ Richard W. Gonnello*
                Richard W. Gonnello

Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor

1

New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
            msullivan@faruqilaw.com
            klenahan@faruqilaw.com

Barbara Rohr  SBN 273353
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 13 2796 CRB**

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 8, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

By:        */s/ Richard W. Gonnello*
              Richard W. Gonnello

## Mailing Information for a Case 3:13-cv-02796-CRB In re Dynavax Technologies Corporation Securities Litigation

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ryan Edward Blair**
  rblair@cooley.com,chourani@cooley.com

- **David Eldridge Bower**
  dbower@faruqilaw.com,brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com,ecfca@faruqilaw.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,dbehnke@faruqilaw.com

- **Emily Victoria Griffen**
  egriffen@shearman.com,rcheatham@shearman.com

- **Jeffrey Michael Kaban**
  kabanjm@cooley.com,jdwyer@cooley.com,lalmanza@cooley.com

- **Katherine M. Lenahan**
  klenahan@faruqilaw.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Mark Punzalan**
  markp@punzalanlaw.com,office@punzalanlaw.com

- **Kathlyn Anne Querubin**
  kquerubin@cooley.com,ccornell@cooley.com,galvarez@cooley.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **Patrick David Robbins**
  probbins@shearman.com,rcheatham@shearman.com

- **Barbara Ann Rohr**
  brohr@faruqilaw.com,smarton@faruqilaw.com,bheikali@faruqilaw.com,ecf@faruqilaw.com

- **Alethea Murray Sargent**
  Alethea.Sargent@Shearman.com,managing-attorney-5081@ecf.pacerpro.com

- **Megan M Sullivan**
  msullivan@faruqilaw.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,jillk@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine      J. Kowalewski
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
```

**Kokoro            Motegi**
Shearman & Sterling LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105