Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
       msullivan@faruqilaw.com
       klenahan@faruqilaw.com

Barbara Rohr SBN 273353
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re DYNAVAX SECURITIES LITIGATION | Case No. 3:13-CV-02796-CRB |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates To: | Judge:  Hon. Charles R. Breyer |
| ALL ACTIONS | Hearing Date:  February 3, 2017 |
| | Time:  10:00 A.M. |
| | Courtroom:  6, 17th Floor |
| | CONSOLIDATED CLASS ACTION |

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE that on February 3, 2017, at 10:00 a.m., in Courtroom 6 on the

3   17th Floor before the Honorable Charles R. Breyer at the United States District Court for the

4   Northern District of California, San Francisco Courthouse, 450 Golden Gate Avenue, San

5   Francisco, CA 94102, Lead Plaintiff Khaled Khalafallah ("Lead Plaintiff") and Plaintiff Ron

6   Franklin (together with Lead Plaintiff "Plaintiffs") hereby move for an order granting (i) final

7   approval of the proposed settlement of this action; (ii) final certification of the proposed class for

8   purposes of settlement; and (iii) granting final approval of the proposed plan of allocation.

9       This motion is based upon the Memorandum of Points and Authorities for Final Approval of

10  the Class Action Settlement set forth below, the Declaration of Nadeem Faruqi in support of the

11  Motion for Final Approval of the Class Action Settlement and the Motion for Approval of

12  Attorneys' Fees and Reimbursement of Expenses, with attached exhibits, and the pleadings and

13  records on file in this action, and other such matters and argument as the Court may consider at the

14  hearing of this motion.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 13 2796 CRB**

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION................................................................................. i

SUMMARY OF THE ARGUMENT.................................................................................v

MEMORANDUM OF POINTS AND AUTHORITIES......................................................1

I.   FACTUAL AND PROCEDURAL BACKGROUND ...................................................1

   A.   Description of the Action ...................................................................................1

   B.   The Proposed Settlement ...................................................................................3

II.  ARGUMENT ...........................................................................................................4

   A.   The Proposed Settlement Merits Final Approval .................................................4

      1.   The Proposed Settlement Is Not the Result of Collusion...........................4

      2.   The Proposed Settlement Is Fair, Adequate, and Reasonable ...................6

         a.   The Strength of the Case and Risks and Expense Inherent to
              Further Litigation Support Final Approval ...................................6

         b.   The Risks Facing Class Certification Support Final Approval ......8

         c.   The Amount of the Settlement Supports Final Approval..............9

         d.   The Stage of the Proceedings Supports Final Approval.............10

         e.   The Experience of Counsel Supports Final Approval.................11

         f.   The Reaction of the Class Supports Final Approval ..................12

   B.   The Plan of Allocation Is Fair and Reasonable ..................................................12

   C.   The Notice Program Satisfied Rule 23, the PSLRA, and Due Process...............14

   D.   The Class Should Be Certified For Settlement Purposes ....................................15

III. CONCLUSION..........................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*In re Am. Apparel S'holder Litig.*,
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ............................................ vii, 12

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ...................................................................................v, 4, 5, 6

*In re Celera Corp. Secs. Litig.*,
  2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ................................. vii, 7, 12, 14

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...................................................................................................9

*Chun-Hoon v. McKee Foods Corp.*,
  716 F.Supp.2d 848 (N.D. Cal. 2010)....................................................................................12

*Churchill Village, L.L.C. v. General Electric*,
  361 F.3d 566 (9th Cir. 2004) ......................................................................................... vi, 6

*In re Citigroup Sec. Litig.*,
  2014 U.S. Dist. LEXIS 69382 (S.D.N.Y. May 20, 2014) .....................................................9

*Destefano v. Zynga, Inc.*,
  2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016)......................................4, 5, 6, 10

*Glass v. UBS Fin. Servs.*,
  2009 U.S. App. LEXIS 2581 (9th Cir. Jan. 14, 2009) .........................................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (U.S. 2014) ...................................................................................................8

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 U.S. Dist. LEXIS 162120 (N.D. Cal. Nov. 21, 2016)...............................................v, 4

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005).....................................................13

*In re High-Tech Emple. Antitrust Litig.*,
  2015 U.S. Dist. LEXIS 118051 (N.D. Cal. Sept. 2, 2015).....................................................12

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................................................8, 11

*Johansson-Dohrmann v. CBR Sys.*,
  2013 U.S. Dist. LEXIS 103863 (S.D. Cal. July 24, 2013).....................................................7

iii

*Klee v. Nissan N. Am., Inc.*,
    2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015) ........................................6

*Lane v. Facebook, Inc.*,
    2010 U.S. Dist. LEXIS 24762 (N.D. Cal. Mar. 17, 2010) ...............................8, 9

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998).............................................................................4, 9

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................8, 11

*Nobles v MBNA Corp.*,
    2009 U.S. Dist. LEXIS 59435 (N.D. Cal. 2009) (Breyer, J.)..............................4, 7

*Officers for Justice v. Civil Service Com.*,
    688 F.2d 615 (9th Cir. 1982)....................................................................................9

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007).............................................................8, 12

*Ramirez v. Ghilotti Bros.*,
    2014 U.S. Dist. LEXIS 56038 (N.D. Cal. Apr. 21, 2014) (Breyer, J.)...................11

*Rieckborn v. Velti PLC*,
    2015 U.S. Dist. LEXIS 13542 (N.D. Cal. Feb. 3, 2015) ..................................5, 11

*Roberti v. OSI Sys.*,
    2015 U.S. Dist. LEXIS 164312 (C.D. Cal. Dec. 8, 2015)........................................6

*Rubio-Delgado v. Aerotek, Inc.*,
    2015 U.S. Dist. LEXIS 75300 (N.D. Cal. June 10, 2015)..................................9, 10

*Ruch v. Am Retail Grp., Inc.*,
    2016 U.S. Dist. LEXIS 133832 (N.D. Cal. Sept. 28, 2016).................................v, 5

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) ...................................................................................... vi, 4

Kyle Dennis, *Does Dynavax Need A Partner?*,
    Seeking Alpha (Nov. 30, 2016, 3:14 PM ET) ........................................................8

Rules 23(c)(2)(B) and 23(e)(1)...............................................................................14

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action
    Litigation: 2015 Full-Year Review* (NERA 2016) ..................................................9

## STATEMENT OF ISSUES TO BE DECIDED

1.      Should final approval of the proposed settlement be granted?

2.      Should the proposed class be certified for settlement purposes and should Plaintiffs be appointed as Class Representatives and Faruqi & Faruqi, LLP (the "Faruqi Firm") appointed as Class Counsel?

3.      Should final approval of the plan of allocation be granted?

## SUMMARY OF THE ARGUMENT

After nearly three years of intensive litigation, Plaintiffs seek preliminary approval of a proposed settlement of this putative class action (the "Action") for $4,500,000 (the "Settlement"). The Settlement represents a certain and substantial recovery for the members of the proposed Settlement Class (the "Class Members") and (1) "is not the product of collusion among the negotiating parties" and (2) "is fundamentally fair, adequate, and reasonable[.]"  *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *13 (N.D. Cal. Nov. 21, 2016).

## The Settlement Is Not The Result of Collusion

The Settlement is not the result of so-called "obvious collusion."  The terms of the Settlement were reached with the assistance of experienced Mediator Jed Melnick at an in-person mediation session and through the course of numerous conference calls thereafter.  *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 133832, at *25-26 (N.D. Cal. Sept. 28, 2016) (finding no collusion when the parties "participated in a formal private mediation, then spent several weeks negotiating the details of the Settlement Agreement and the class notice.").

The Settlement is also not the result of subtle collusion as identified by *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Lead Counsel is only requesting attorneys' fees in the amount of 25% of the Settlement Fund after deduction of Litigation Expenses, and there is no clear sailing provision or kicker provision reverting unpaid fees to Defendants.  *See Bluetooth*, 654 F.3d at 947.

1  <u>**The Settlement Is Fair, Adequate, and Reasonable**</u>

2          Rule 23(e) provides that a class action settlement must receive court approval.  A court

3  should approve a class action settlement if it determines that the settlement is "fair, reasonable, and

4  adequate[.]"  Fed. R. Civ. P. 23(e)(2).  When determining whether a settlement satisfies Rule 23(e),

5  courts in this Circuit consider the following list of non-exhaustive factors:  (1) the strength of the

6  plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

7  risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5)

8  the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

9  counsel; (7) the presence of a government participant; and (8) the reaction of the class members to

10  the proposed settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir.

11  2004).

12          The Settlement here warrants approval based on these factors.  First, while Plaintiffs believe

13  that their claims have substantial merit, they believe that the risks imposed by future litigation

14  supports the reasonableness of the immediate and certain benefit provided by the Settlement.  For

15  example, completion of fact discovery would be very time consuming and costly, and might only

16  result in the claims being dismissed at summary judgment or trial, leaving the Class with no

17  recovery.  Also, Dynavax has well-publicized financial problems that put any future recovery into

18  jeopardy.

19          Second, Plaintiffs are aware of several issues that Defendants may raise at the class

20  certification stage of the litigation.  The Court may find these arguments persuasive and decide

21  against certifying the Class.

22          Third, the Settlement Amount represents an excellent result for the Class.  $4,500,000 is

23  2.6% of the maximum damages Plaintiffs' expert estimated the Class sustained as a result of

24  Defendants' alleged fraudulent activity.  This is much higher than the median ratio of settlement

25  amounts to investor losses for 2015 which NERA Economic Consulting determined was 1.6%.

26          Fourth, Lead Counsel and Defense Counsel both have extensive experience litigating and

27  settling securities class actions and Lead Counsel believes that the Settlement represents an

28  excellent result for the Class.

1    Finally, the Class's reaction to the Settlement thus far has been overwhelmingly positive.

2  As of December 27, 2016, not one Class member has objected to the Settlement, Plan of Allocation,

3  or request for attorneys' fees and expenses, and as of December 21, 2016 not one Class member has

4  sought exclusion from the terms of the Settlement.

5  **The Plan of Allocation Is Fair, Adequate, and Reasonable**

6    "Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is

7  governed by the same standards of review applicable to approval of the settlement as a whole: the

8  plan must be fair, reasonable and adequate."  *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist.

9  LEXIS 184548, at *60 (C.D. Cal. July 28, 2014).

10    The Plan of Allocation in this case was designed by Plaintiffs' economic expert to provide

11  each Authorized Claimant with its *pro rata* share of the Net Settlement Fund.  The amount

12  recovered per share will vary depending upon when in relation to the series of corrective disclosures

13  each previously purchased share was sold and also those Authorized Claimants who purchased

14  shares contemporaneously with the Symphony Defendants' sales will have their relevant

15  Recognized Losses tied to those trades multiplied them by 1.25 to account for their additional

16  claims under Section 20A.  Plaintiffs respectfully submit that the Plan of Allocation is fair and

17  reasonable.

18  **The Notice Program Satisfied Rule 23, the PSLRA, and Due Process**

19    The Settlement Notice and Publication Notice include all of the information that is required

20  by due process, Rule 23(c)(2)(B), Rule 23(e), and the Private Securities Litigation Reform Act of

21  1995, (the "PSLRA"), 15 U.S.C. § 78u-4, and were made available to Class Members through the

22  standard methods of mailing, publication, and a designated website.  *See, e.g.*, *In re Celera Corp.*

23  *Secs. Litig.*, 2015 U.S. Dist. LEXIS 157408, at *12-13 (N.D. Cal. Nov. 20, 2015) (sending notice

24  packets via U.S. mail, publishing a summary notice in *Investor's Business Daily*, and establishing a

25  dedicated settlement website were sufficient to satisfy the notice requirements).  The Settlement

26  Notice has been timely mailed to 27,141 potential Class Members beginning on November 7, 2014

27  and the Publication Notice was timely published in *Investor's Business Daily* and posted on *PR*

28  *Newswire*.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 13 2796 CRB**

**<u>The Class Should Be Certified For Settlement Purposes</u>**

The Court preliminarily certified the proposed Settlement Class on October 14, 2016.  The circumstances have remained the same since preliminary approval; thus Plaintiffs respectfully request that the Court certify the Class set forth in the Stipulation for settlement purposes, appoint Khaled Khalafallah and Ron Franklin as Class Representatives, and appoint Faruqi & Faruqi, LLP as Class Counsel.

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**
**CV 13 2796 CRB**

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs, on behalf of themselves and the putative Class, and defendants Dynavax, Dino Dina, and J. Tyler Martin (collectively, the "Dynavax Defendants")[1] and Mark Kessel, Symphony Capital Partners, L.P., Symphony Capital GP, L.P., Symphony GP, LLC, and Symphony Strategic Partners, LLC (collectively, the "Symphony Defendants" and together with the Dynavax Defendants, "Defendants")[2] have reached a proposed settlement of this Action for $4,500,000 that, if approved, will resolve all claims in the Action.  Plaintiffs respectfully submit this memorandum of law in support of their motion and request that the Court enter the proposed Final Order and Judgment of Dismissal with Prejudice ("Final Order").  The Final Order will, among other things, (1) approve the Settlement on the terms set forth in the Stipulation; (2) certify the Class for settlement purposes; and (3) approve the Plan of Allocation.

The Settlement resulted from arm's-length negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  In light of the significant risk that a smaller recovery—or no recovery at all—might be achieved if the Action were to proceed to trial, and the likely appeals that would follow, the Settlement represents an excellent result for the Class.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description of the Action

This Action arises out of Dynavax's allegedly false and misleading statements concerning the Company's Biologic License Application ("BLA") for its Hepatitis B vaccine, HEPLISAV, and the Symphony Defendants' sales of Dynavax common stock while allegedly in possession of confidential, inside information.

Commencing on June 18, 2013, two securities class action complaints were filed against the Dynavax Defendants bringing claims for violations of §§ 10(b) and 20(a) of the Securities

---

[1]    All capitalized terms that are not defined herein shall have the same meaning as those in the Stipulation and Agreement of Settlement dated as of September 7, 2016 (the "Stipulation") (ECF No. 140).  All references to the "Faruqi Decl." are to the Declaration of Nadeem Faruqi in Support of Plaintiffs' Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses ("Faruqi Declaration" or "Faruqi Decl.") filed currently herewith.  All quotations and citations are omitted unless otherwise noted.

[2]    Plaintiffs and Defendants are defined herein as the "Settling Parties."

1

1   Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and

2   Exchange Commission (the "SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.

3   *See* Faruqi Decl. ¶23.  On August 22, 2013, the Court consolidated the two actions and re-captioned

4   the Action as *In re Dynavax Technologies Corp. Sec. Litig.*, 3:13-CV-02796-CRB.  *See id.* ¶24.

5   Then, on September 27, 2013, the Court appointed Khaled Khalafallah as Lead Plaintiff and

6   approved Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.  *See id.*

7        On November 12, 2013, Lead Plaintiff filed a Consolidated Class Action Complaint (the

8   "CC") adding Mark Kessel as a defendant.  *See id.* ¶25.  While in the midst of briefing the first

9   motion to dismiss, Lead Plaintiff received the Form 483 from the U.S. Food and Drug

10  Administration ("FDA") as a result of several Freedom of Information Act ("FOIA"), 5 U.S.C. §

11  552, requests submitted to the agency.  *See id.* ¶26.  As a result of this development, on April 7,

12  2014, the parties agreed to abandon the motion to dismiss, and Khaled Khalafallah filed an

13  Amended Consolidated Class Action Complaint (the "AC") adding the Symphony entities as

14  defendants and Ron Franklin as a plaintiff.  *See id.*  After partially briefing a second motion to

15  dismiss the AC, pursuant to a subsequent agreement among the parties, Plaintiffs filed the Second

16  Amended Class Action Complaint (the "SAC") on September 10, 2014.  *See id.* ¶27.

17       The SAC alleges that the Dynavax Defendants violated the Exchange Act by making three

18  categories of misleading statements and omissions during the Class Period: (a) Dynavax concealed

19  that it had not validated its manufacturing processes and controls prior to filing its BLA for

20  HEPLISAV with the FDA; (b) Dynavax concealed that it had received a Form 483 following the

21  FDA's pre-approval inspection of one of Dynavax's manufacturing facilities; and (c) after the FDA

22  denied approval of the BLA, Dynavax misrepresented that the FDA left the door completely open

23  for approval, when in fact, significant obstacles to approval remained.  *See id.* ¶¶12-21.  The SAC

24  also alleges that the Symphony Defendants violated the Exchange Act by engaging in insider

25  trading, selling 6 million shares of Dynavax common stock while in possession of the Form 483.

26  *See id.* ¶19.  As alleged in the SAC, the truth regarding the Dynavax Defendants' misleading

27  statements was revealed in two separate disclosures.  *See id.* ¶¶20, 21.  First, on February 25, 2013,

28  the FDA issued a Complete Response Letter denying approval of the BLA due to, among other

1  reasons, deficiencies in Dynavax's process validation program and manufacturing controls and

2  facilities related to the assurance of the quality of the commercial product.  *See id.* ¶20.  Several

3  months later, on June 10, 2013, Dynavax announced that the FDA would require additional patients

4  in the safety database before it would consider granting approval of the BLA.  *See id.* ¶21.  The

5  fraudulent activity alleged in the SAC and later disclosed to the public caused investors who

6  purchased Dynavax common stock to suffer significant damages.  *See id.* ¶¶20, 21.

7       On February 20, 2015, Senior District Judge Charles R. Breyer held a hearing during which

8  he denied in part and granted in part Defendants' motions to dismiss the SAC.  *See id.* ¶29.  On

9  April 6, 2015 Defendants filed their Answers to the SAC; and on April 17, 2015, the Symphony

10  Defendants (minus Kessel) filed a motion to certify the motion to dismiss order for interlocutory

11  appeal.  *See id.* ¶30.  Plaintiffs opposed the motion for interlocutory appeal which was subsequently

12  removed from the Court's calendar after the parties agreed to mediation.  *See id.*  Defendants

13  continue to deny that they committed any acts or omissions giving rise to any liability and/or

14  violations of the law.  *See* Stipulation at 3.

15       On August 4, 2015, the Settling Parties met with Jed Melnick of Judicial Arbitration

16  Mediation Services ("JAMS"), a well-respected mediator, for an arm's-length mediation session.

17  *See* Faruqi Decl. ¶34.  During the session, the parties extensively debated the strengths and

18  weaknesses of Plaintiffs' claims and the defenses available to Defendants; however, the Settling

19  Parties were not able to reach an agreement during the session.  *See id.* ¶35.  To facilitate

20  settlement, after the mediation session, Defendants produced certain categories of documents to

21  Plaintiffs in order to shed light on their defenses.  *See id.*  The parties subsequently engaged in

22  several mediation discussions to further discuss the merits of the claims and defenses.  *See id.*  On

23  April 18, 2016, the Settling Parties were able to reach an agreement in principle to settle the claims

24  against Defendants and then worked over the course of several months to finalize the terms of the

25  Stipulation.  *See id.* ¶36.

26       **B.    The Proposed Settlement**

27       The Settlement, which was reached after extensive pre-trial investigation, briefing,

28  consultation with experts, and arm's-length negotiations conducted in good faith, provides that

3

1   Defendants will cause the amount of $4,500,000 to settle all claims asserted against them in the

2   Action.  *See id.* ¶49.  The Settlement Amount will be paid into escrow and, after paying attorneys'

3   fees and expenses approved by the Court, and other costs of settlement, the Net Settlement Amount

4   will be distributed among the Class Members with Recognized Losses who timely submit valid

5   Proof of Claim forms (the "Authorized Claimants").  *See id.* ¶51.

6   **II.   ARGUMENT**

7   **A.      The Proposed Settlement Merits Final Approval**

8          Rule 23(e) provides that a class action settlement must receive court approval.  A court

9   should approve a class action settlement if it determines that the settlement is "fair, reasonable, and

10  adequate[.]"  Fed. R. Civ. P. 23(e)(2).  While the authority to grant such an approval lies within the

11  court's discretion, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly

12  where complex class action litigation is concerned."  *See Linney v. Cellular Alaska P'ship*, 151

13  F.3d 1234, 1238 (9th Cir. 1998).  Indeed, as this Court has explained, "intrusion upon what is

14  otherwise a private consensual agreement negotiated between the parties to a lawsuit must be

15  limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of

16  fraud or overreaching by, or collusion between, the negotiating parties."  *Nobles v MBNA Corp.*,

17  2009 U.S. Dist. LEXIS 59435, at *5 (N.D. Cal. 2009) (Breyer, J.).  Thus, when deciding whether to

18  approve a settlement, the court must ensure that (1) "the settlement is not the product of collusion

19  among the negotiating parties" and (2) that the "settlement is fundamentally fair, adequate, and

20  reasonable[.]"  *Hayes v. MagnaChip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *13

21  (N.D. Cal. Nov. 21, 2016).

22          **1.      The Proposed Settlement Is Not the Result of Collusion**

23          "In [*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)], the

24  Ninth Circuit explained that when a settlement agreement is negotiated *prior* to formal class

25  certification," the court must also analyze whether the settlement was reached as a result of

26  collusion between the parties.  *Destefano v. Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, at *28

27  (N.D. Cal. Feb. 11, 2016).  In addition to obvious signs of collusion, *Bluetooth* identified three

28  subtle signs of collusion: (1) when class counsel receives a disproportionate percentage of the

4

1    settlement; (2) when the parties negotiate a "clear sailing" agreement separate from the settlement

2    funds; and (3) when the parties arrange for fees not paid to revert to defendants.  *See id.*

3          Here, there are no obvious signs of collusion because there was no collusion.  After

4    contentiously litigating this Action for several years and analyzing the risks and costs of moving

5    forward with the Action, the Settling Parties engaged Jed Melnick of JAMS, a well-respected and

6    highly experienced mediator, to assist them in exploring a potential resolution of the Action.  *See*

7    Faruqi Decl. ¶34.  On August 4, 2015, the Settling Parties met with Mr. Melnick for an arm's-

8    length mediation session.  *See id.*  During the session, the parties extensively debated the strengths

9    and weaknesses of Plaintiffs' claims and the defenses available to Defendants; however the Settling

10   Parties were not able to reach a resolution at that time.  *See id.* ¶¶34, 35.  To facilitate mediation

11   discussions, Dynavax agreed to produce certain categories of documents to Plaintiffs, including

12   board meeting minutes.  *See id.* ¶35.  After reviewing these documents, Plaintiffs and Defendants

13   engaged in additional telephonic mediation sessions with Mr. Melnick, whereby each side presented

14   their strongest arguments.  *See id.*  After numerous conferences, on April 18, 2016, the Settling

15   Parties were able to reach an agreement in principle to settle the claims against Defendants and then

16   worked over the course of several months to finalize the terms of the Stipulation.  *See id.* ¶36.

17   Thus, the Settling Parties did not obviously engage in collusion when entering into the Settlement.

18   *See Ruch v. Am Retail Grp., Inc.*, 2016 U.S. Dist. LEXIS 133832, at *25-26 (N.D. Cal. Sept. 28,

19   2016) (finding no collusion when the parties "participated in a formal private mediation, then spent

20   several weeks negotiating the details of the Settlement Agreement and the class notice.").

21         None of the subtle factors indicating collusion are present here either.  Lead Counsel has

22   requested an award of attorneys' fees equal to 25% of the Settlement Fund, after deduction of the

23   Litigation Expenses (consisting of $100,902.12 in expenses plus the $10,000 in incentive awards).

24   *See* Faruqi Decl. ¶73.  This percentage is the benchmark in the Circuit and often awarded in similar

25   actions, thus weighing against a finding of collusion.  *See Rieckborn v. Velti PLC*, 2015 U.S. Dist.

26   LEXIS 13542, at *29 (N.D. Cal. Feb. 3, 2015) (finding 25% fee and $219,000 in litigation expenses

27   weighed against finding of collusion).  A "clear sailing" agreement exists when the parties negotiate

28   . . . [an] arrangement providing for the payment of attorneys' fees separate and apart from class

1    funds[.]" *Bluetooth*, 654 F.3d at 947.  There is no such arrangement here as the attorneys' fees are

2    to be paid only out of the Settlement Fund, and at a rate approved by the Court.  *See* Stipulation

3    ¶18.  Indeed, Defendants specifically stipulate that they are not responsible for paying any

4    attorneys' fees.  *See id.*  Further, even if there were such an agreement, "despite the presence of a

5    clear sailing agreement, . . . the absence of a 'kicker provision' stating that all fees not awarded

6    would revert to defendants, weighs against a finding of collusion."  *Klee v. Nissan N. Am., Inc.*,

7    2015 U.S. Dist. LEXIS 88270, at *32 (C.D. Cal. July 7, 2015).  In this case, any attorneys' fees

8    requested but denied by the Court would remain in the Class's Settlement Fund.

9         Therefore, because the terms of the Settlement were negotiated at arm's-length over the

10   course of many months with the help of an esteemed mediator, the Settlement is not the result of

11   collusion between the parties.  *See Roberti v. OSI Sys.*, 2015 U.S. Dist. LEXIS 164312, at *9-10

12   (C.D. Cal. Dec. 8, 2015) (full day mediation session and subsequent discussions with the help of an

13   experienced mediator supported finding that settlement was not the result of collusion).

14              **2.      The Proposed Settlement Is Fair, Adequate, and Reasonable**

15        When determining whether a settlement satisfies Rule 23(e), courts in this Circuit consider

16   the following list of non-exhaustive factors:  (1) the strength of the plaintiff's case; (2) the risk,

17   expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action

18   status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

19   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

20   presence of a government participant;[3] and (8) the reaction of the class members to the proposed

21   settlement.  *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004).  "The

22   Court need not consider all of these factors, or may consider others."  *Zynga, Inc.*, 2016 U.S. Dist.

23   LEXIS 17196, at *27-28.  As discussed below, the relevant factors support final approval of the

24   Settlement.

25              **a.      The Strength of the Case and Risks and Expense Inherent to
                          Further Litigation Support Final Approval**

26

27        Factors one and two support final approval.  When determining the reasonableness of the

28   _____

[3]       The seventh factor is not relevant in this Action because there was no government
participant; thus Plaintiffs will not analyze that factor.

1  settlement, "the Court must balance against the continuing risks of litigation (including the

2  strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and

3  the immediacy and certainty of a substantial recovery." *Johansson-Dohrmann v. CBR Sys.*, 2013

4  U.S. Dist. LEXIS 103863, at *11-12 (S.D. Cal. July 24, 2013).  While "there is no particular

5  formula by which the outcome must be tested" when "assessing the strength of a plaintiff's case,"

6  "[t]he court may presume that through negotiation, the Parties, counsel, and mediator arrived at a

7  reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *In re Celera

8  Corp. Sec. Litig.*, 2015 U.S. Dist. LEXIS 157408, at *15 (N.D. Cal. Nov. 20, 2015).

9       Plaintiffs have always believed that their claims have merit and would be proven true

10 through fact discovery.  Despite this confidence, Plaintiffs are aware of the substantial risks and

11 expenses that would be presented by further litigation based on their work to date.

12      It is well known that class action litigation is inherently complex, *see Nobles*, 2009 U.S.

13 Dist. LEXIS 59435, at *5 (finding a proposed settlement proper "given the inherent difficulty of

14 prevailing in class action litigation"), and this case in particular involves very complex clinical trial

15 data and the FDA's vast regulatory scheme.  In order to develop the claims in the SAC, further

16 completion of the fact discovery process would require, among other things, likely litigation with

17 the FDA, engaging in discovery motion practice, producing and reviewing at least hundreds of

18 thousands of pages of documents, taking numerous depositions, and retaining medical and financial

19 expert witnesses.  Over the past three years of litigation, Defendants have vehemently denied any

20 wrongdoing and would continue to aggressively litigate this Action at each step.  Thus, even after

21 the considerable time and expense of additional discovery, there is a chance Plaintiffs' claims could

22 be dismissed at summary judgment.  Furthermore, in addition to maintaining that they made no

23 misleading statements during the Class Period and that they did not act with scienter, Defendants

24 have argued that Plaintiffs will not be able to disaggregate the damages flowing from the

25 manufacturing issues disclosed on February 25, 2013 from the losses flowing from the safety issues

26 that were also revealed that day but are not the subject of the claims.  *See* Faruqi Decl. ¶40.  A

27 debate over how to calculate the portion of the Class's trading losses that are attributable solely to

28 Defendants' fraud would lead to a costly "battle of experts" that may ultimately bar Plaintiffs and

1   the Class from receiving any recovery.  Even if the claims were to survive summary judgment, trial

2   would be very time consuming and expensive and would monopolize valuable court resources.

3   Even then, the jury might find in Defendants' favor, leaving the Class with no recovery at all.  This

4   Action would not necessarily end after a trial; the losing party might appeal the decision, leading to

5   additional years of protracted litigation.

6          "In most situations, unless the settlement is clearly inadequate, its acceptance and approval

7   are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural*

8   *Telecommunications Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Here, in

9   addition to the foregoing risks and costs, the likelihood of future recovery equal to the Settlement

10  Amount is especially uncertain as it has been reported that Dynavax is set to run out of cash in June

11  2017.  *See* Kyle Dennis, *Does Dynavax Need A Partner?*, Seeking Alpha (Nov. 30, 2016, 3:14 PM

12  ET), http://seekingalpha.com/article/4027373-dynavax-need-partner?app=1.  Thus, with a

13  potentially insolvent corporate defendant, a key source of potential recovery would have been

14  significantly depleted by further litigation, making settlement at this time a more certain benefit for

15  the Class.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007)

16  (granting final approval when "[t]he Company admittedly had no money to fund a judgment or

17  settlement--the only available source of funds was wasting insurance policies.").

18          **b.**     **The Risks Facing Class Certification Support Final Approval**

19          In regard to the third factor, a motion for class certification would face several obstacles in

20  this Action.  For example, Defendants might argue that Plaintiffs cannot show price impact.  *See*

21  *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2416 (U.S. 2014).  As the court in *In*

22  *re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) explained, "[i]f the Court were

23  to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at

24  recovery entirely . . . As Defendants agree to the class certification for the purposes of the

25  Settlement, there is much less risk of anyone who may have actually been injured going away

26  empty-handed."  Although, while Plaintiffs believe that their arguments for certification are

27  meritorious, even if the court certifies a class, "[t]he risk that a class action may be decertified at

28  any time generally weighs in favor of approving a settlement."  *Lane v. Facebook, Inc.*, 2010 U.S.

8

1    Dist. LEXIS 24762, at *17 (N.D. Cal. Mar. 17, 2010).

2        **c.**  **The Amount of the Settlement Supports Final Approval**

3      As the Ninth Circuit has noted, "[t]he proposed settlement is not to be judged against a

4    hypothetical or speculative measure of what *might* have been achieved by the negotiators. . . .";

5    rather, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning

6    of highest hopes." *Officers for Justice v. Civil Service Com.*, 688 F.2d 615, 625 (9th Cir. 1982).

7    Thus, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery

8    does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be

9    disapproved." *Linney*, 151 F.3d at 1242.

10     The Settlement Amount of $4.5 million provides an excellent recovery for the Class and

11   constitutes a material percentage of the likely provable damages suffered by the Class.  It is

12   currently estimated that if Class Members submit claims for 100% of the shares eligible for

13   distribution, the average distribution per share of common stock will be approximately $0.05 before

14   deduction of Court-approved fees and expenses.  If Plaintiffs were to prevail on each of the claims

15   in the SAC at trial, and assuming that 100% of the relevant stock drops are attributable to

16   Defendants' fraud, the damages per share of common stock would be approximately $1.88.  The

17   Settlement Amount is 2.6% of the maximum damages Plaintiffs' expert estimated the Class

18   sustained as a result of Defendants' alleged fraudulent activity.  *See id.* ¶75.  This is much higher

19   than the median ratio of settlement amounts to investor losses for 2015 which NERA Economic

20   Consulting determined was 1.6%.  *See* Faruqi Decl. Ex. B at 34, Svetlana Starykh and Stefan

21   Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review* (NERA

22   2016).  The percentage is also within the range of typical recoveries in complex securities litigation.

23   *See In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001) (noting that typical recoveries in

24   complex securities class actions range from 1.6% to 14% of estimated damages); *see also In re*

25   *Citigroup Sec. Litig.*, 2014 U.S. Dist. LEXIS 69382, at *15 (S.D.N.Y. May 20, 2014) (determining

26   settlement amount equal to 2% of the class' out-of-pocket losses "falls squarely within this range of

27   reasonableness").  As one court in this District recently noted, "[a]lthough the proposed settlement

28   is only a small percentage of the total expected recovery at trial, there is no reason, at least in

1   theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a

2   single percent of the potential recovery." *Rubio-Delgado v. Aerotek, Inc.*, 2015 U.S. Dist. LEXIS

3   75300, at *29 (N.D. Cal. June 10, 2015).

4        Furthermore, as discussed above, if this Action were to proceed, there was a possibility that

5   recovery in an amount greater than the Settlement Amount would not be achieved because (1) a

6   material issue exists as to whether Plaintiffs would be able to prove that all of the Class's losses are

7   attributable to Defendants' alleged fraud and (2) Dynavax is in a precarious financial situation.  *See*

8   Faruqi Decl. ¶¶40, 47.  Thus, the Settlement Amount is not only reasonable, it represents an

9   immediate and certain recovery.

10            d.        **The Stage of the Proceedings Supports Final Approval**

11        When determining whether the settlement is fair, "the court focuses on whether the parties

12   carefully investigated the claims before reaching a resolution."  *Zynga*, 2016 U.S. Dist. LEXIS

13   17196, at *42.

14        Here, the parties agreed to engage in a mediation session after, *inter alia*, (1) Lead Counsel

15   conducted an extensive investigation into the facts alleged in the Action, reviewing FDA

16   documents, press releases, SEC filings, conference call transcripts, and analyst reports; (2) Lead

17   Counsel submitted several FOIA requests to the FDA, corresponded with the FDA's legal counsel,

18   and reviewed documents produced by the FDA; (3) Lead Counsel researched and drafted three

19   amended complaints; (4) Lead Counsel researched and drafted three rounds of motion to dismiss

20   briefing; (5) Lead Counsel consulted with a damages expert; (6) Defendants filed answers to the

21   SAC and the Symphony Defendants filed a motion for interlocutory appeal; and (7) Lead Counsel

22   researched and drafted the opposition to the motion for interlocutory appeal.  *See* Faruqi Decl. ¶32.

23   Prior to meeting for the mediation session, all parties submitted mediation briefs that further

24   detailed the validity of their positions.  *See id.* ¶34.  During the mediation session all parties

25   extensively debated the strengths and weaknesses of the case on an arm's-length basis but were not

26   able to reach a resolution.  *See id.* ¶35.  In an effort to facilitate settlement discussions, Dynavax

27   agreed to produce several thousand pages of documents which Lead Counsel reviewed and

28   followed-up with more requests.  *See id.*  The parties then engaged in additional telephonic

1    mediation sessions with the help of Mr. Melnick over the following months prior to reaching a

2    resolution. *See id.*  Thus, the Settling Parties entered into the Settlement with a comprehensive

3    understanding of the strengths and weaknesses of their positions and the procedural hurdles facing

4    this Action. *See id.* ¶33.  In *Velti*, 2015 U.S. Dist. LEXIS 13542, at *24, the court found that while

5    the settlement was reached prior to even the filing of a motion to dismiss, "the Settling Parties have

6    shown that their decision to settle was made on the basis of a thorough understanding of the

7    relevant facts and law."  Therefore, this factor also supports final approval.

8                    **e.        The Experience of Counsel Supports Final Approval**

9            "Great weight is accorded to the recommendation of counsel, who are most closely

10   acquainted with the facts of the underlying litigation." *DIRECTV*, 221 F.R.D. at 528.  As this Court

11   has held, "[w]hen class counsel is experienced and supports the settlement, and the agreement was

12   reached after arm's length negotiations, courts should give a presumption of fairness to the

13   settlement." *Ramirez v. Ghilotti Bros.*, 2014 U.S. Dist. LEXIS 56038, at *3 (N.D. Cal. Apr. 21,

14   2014) (Breyer, J.).

15          As set forth in detail in the Faruqi Firm's resume attached as Exhibit C to the Faruqi

16   Declaration, Lead Counsel is a nationally-recognized law firm that has substantial experience

17   litigating and settling securities class action lawsuits.  Defendants' attorneys, Cooley, LLP and

18   Shearman & Sterling, LLP, are also excellent law firms that are nationally renowned for their

19   securities litigation practices and the teams that litigated this Action have been involved in many

20   pivotal securities class action lawsuits. *See* Faruqi Decl. ¶77.

21          The Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal

22   authorities and evidence to support the claims asserted against Defendants, the likelihood of

23   prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood

24   of subsequent appellate proceedings even if Plaintiffs prevailed against Defendants at trial,

25   concluded that the Settlement here is an excellent result for the Class. *See id.* ¶¶37-48.  Thus, since

26   "[b]oth Parties are represented by experienced counsel[,] . . . their mutual desire to adopt the terms

27   of the proposed settlement, while not conclusive, is entitled to great deal of weight." *Immune*

28   *Response*, 497 F. Supp. 2d at 1174.

### f.      The Reaction of the Class Supports Final Approval

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043.  "[T]he willingness of the overwhelming majority of the class to approve the offer and remain part of the class presents at least some objective positive commentary as to its fairness." *Celera*, 2015 U.S. Dist. LEXIS 157408, at *22.

Here, beginning on November 7, 2016, 27,141 Settlement Notices and Proof of Claim forms were mailed to potential Class members. *See* Fraga Decl. ¶¶3-9.  Moreover, the website dedicated to the Settlement went live on November 7, 2016. *See id.* ¶12.  Also, on November 14, 2016, the Publication Notice was published in *Investor's Business Daily* and posted on *PR Newswire*. *See id.* ¶10.  As of December 27, 2016, not one Class member has objected to the Settlement, Plan of Allocation, or request for attorneys' fees and expenses, and as of December 21, 2016, not one Class member has sought exclusion from the terms of the Settlement. *See id.* ¶13; Faruqi Decl. ¶62. Thus, although the time for objections and exclusions has not yet expired, the reaction of the Class thus far greatly emphasizes the adequacy of the Settlement. *See Chun-Hoon v. McKee Foods Corp.,* 716 F.Supp.2d 848, 852 (N.D. Cal. 2010) (concluding, in a case where "[a] total of zero objections and sixteen opt-outs (comprising 4.86% of the class) were made from the class of roughly three hundred and twenty-nine (329) members," that the reaction of the class "strongly supports settlement").

### B.      The Plan of Allocation Is Fair and Reasonable

The Court has broad discretion in approving a plan of allocation.  "Approval of a plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Am. Apparel S'holder Litig.*, 2014 U.S. Dist. LEXIS 184548, at *60 (C.D. Cal. July 28, 2014).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re High-Tech Emple. Antitrust Litig.*, 2015 U.S. Dist. LEXIS 118051, at *23-24 (N.D. Cal. Sept. 2, 2015).

Here, in developing the Plan of Allocation Lead Counsel enlisted the help of a damages expert who was familiar with the various damages issues in this Action. *See* Faruqi Decl. ¶69. The objective of the Plan of Allocation is to distribute a *pro rata* share of the Net Settlement Fund to Authorized Claimants based upon their claimed losses. *See id.* ¶67. Specifically, after the Authorized Claimants submit their Proof of Claim forms and supporting documentation, the Claims Administrator will calculate each Authorized Claimants' Recognized Loss according to a formula that will take into account when they purchased the shares and when the shares were sold. *See id.* In order to have a Recognized Loss under the Plan of Allocation, Authorized Claimants must have purchased common stock during the Class Period and held their stock through at least one of the two corrective disclosures set forth in the Plan. *See id.* The amount recovered per share will vary depending upon when in relation to the series of corrective disclosures each share was sold. *See id.* Authorized Claimants also cannot recover more than their out of pocket losses.

Also, to reflect the additional damages that may be available under Section 20A, as a result of the claims set forth in Count IV of the SAC, if an Authorized Claimant purchased common stock contemporaneously with the Symphony Defendants' sales of common stock, meaning any time between Tuesday, October 16, 2012 and Friday, October 19, 2012, the Authorized Claimant's Recognized Loss shall be multiplied by 1.25. *See id.* ¶68. This distinction is permissible because a plan of allocation may distribute a greater proportion of recovery to some claimants when there is a rational basis for treating claimants differently. *See Glass v. UBS Fin. Servs.*, 2009 U.S. App. LEXIS 2581, at *4-5 (9th Cir. Jan. 14, 2009); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *38-39 (C.D. Cal. June 10, 2005) ("[A] plan of allocation . . . fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Settlement Notice that was mailed to 27,141 potential Class Members and nominees and posted on the website www.DynavaxSecuritiesLitigation.com. *See* Fraga Decl. ¶¶3-9, 12; Fraga Ex. A at 5-8. To date,

1  there have been no objections to the Plan.  *See* Faruqi Decl. ¶70.  Thus, for the reasons set forth

2  herein and in the Faruqi Declaration, the Plan of Allocation should be approved.

### C.     The Notice Program Satisfied Rule 23, the PSLRA, and Due Process

4          Notice of a class action settlement must meet the requirements of Rule 23 of the Federal

5  Rules of Civil Procedure, the PSLRA, and the due process clause of the United States Constitution.

6  Rules 23(c)(2)(B) and 23(e)(1) require the Court to direct to potential settlement class members

7  "the best notice that is practicable under the circumstances" and "in a reasonable manner."  The

8  PSLRA and the due process clause impose similar requirements.

9          The Court preliminarily approved the form, content, and method of dissemination of the

10  Settlement Notice and the Publication Notice (the "Notices") provided to potential Class Members.

11  *See* ECF No. 144.  Pursuant to the Preliminary Approval Order, the Settlement Notice has been

12  mailed to 27,141 potential Class Members beginning on November 7, 2016.  *See* Fraga Decl. ¶¶3-9.

13  That same day, the Settlement Notice and the Proof of Claim form were also made available on

14  www.DynavaxSecuritiesLitigation.com.  *See id.* ¶12.  The Publication Notice was published in

15  *Investor's Business Daily* and posted by *PR Newswire* on November 14, 2016.  *See id.* ¶10.

16          Pursuant to the requirements of Rule 23, the due process clause, the PSLRA, and the

17  Northern District of California's Local Guidelines, the Settlement Notice included the following

18  information: (i) the case caption; (ii) a description of the claims; (iii) a description of the Settlement

19  Class; (iv) the names of Lead Counsel; (v) the amount of attorneys' fees and expenses that will be

20  requested; (vi) the Final Fairness Hearing date; (vii) the Class Members' opportunity to appear at

21  the Final Fairness Hearing; (viii) the deadline for filing objections to and exclusions from the

22  Settlement; (ix) the consequences of exclusion; (x) the consequences of remaining a Class Member;

23  (xi) the manner in which to obtain more information; and (xii) directions on how to access the case

24  docket.  *See* Fraga Decl., Ex A.

25          Courts in this Circuit have routinely found that this method of mailing, publication, and

26  internet notice satisfies the applicable notice standards in similar class actions.  *See Celera*, 2015

27  U.S. Dist. LEXIS 157408, at *12-13 (sending notice packets via U.S. mail, publishing a summary

28  notice in Investor's Business Daily, and establishing a dedicated settlement website were all

1  sufficient to satisfy the notice requirements).  Thus, Plaintiffs respectfully request that the Court

2  find the notice program satisfied the requirements of Rule 23, the PSLRA, and due process.

3         **D.      The Class Should Be Certified For Settlement Purposes**

4         Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for

5  Settlement purposes.  *See* ECF No. 144.  Since the entry of that Order, no circumstances have

6  changed to alter the propriety of the Court's certification and appointments.  *See In re Bear Stearns*

7  *Cos.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally certifying a settlement class where there

8  had been no material changes since the court preliminarily certified the class).  Thus, pursuant to

9  Rules 23(a) and (b)(3), and for the reasons set forth below and in further detail on pages 8 to 13 of

10  the Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Approval of the Class

11  Action Settlement (ECF No. 141), Plaintiffs respectfully request that the Court finally certify the

12  following Class for purposes of Settlement:

13              Lead Plaintiff and Ron Franklin as well as all Persons who purchased or
            otherwise acquired Dynavax common stock during the Class Period and
14              who allege to have been damaged thereby.  Excluded from the Class are
            Defendants named herein; members of their immediate families; any firm,
15              trust, partnership, corporation, officer, director, or other individual or
            entity in which a Defendant has a controlling interest or which is related to
16              or affiliated with any of the Defendants and the legal representatives,
            heirs, successors-in-interest or assigns of such excluded Persons. Also
17              excluded from the Class is any Person who properly excludes himself,
            herself, or itself by filing a valid and timely request for exclusion in
18              accordance with the requirements to be set forth in the Settlement Notice.

19  Stipulation ¶1.d, ECF No. 140.

20         Plaintiffs also respectfully requests that the Court finally appoint Plaintiffs Khaled

21  Khalafallah and Ron Franklin as Class Representatives and the Faruqi Firm as Class Counsel.

22  **III.    CONCLUSION**

23         For the reasons stated above, Plaintiffs respectfully request that this Court (a) grant final

24  approval of the proposed Settlement; (b) certify the proposed settlement Class, appoint Plaintiffs as

25  settlement Class Representatives, and the Faruqi Firm as settlement Class Counsel; and (c) grant

26  approval of the Plan of Allocation.

27  Dated: December 27, 2016          **FARUQI & FARUQI, LLP**

28                             By: _/s/ Richard W. Gonnello_

Richard W. Gonnello

Richard W. Gonnello (admitted *pro hac vice*)
Megan M. Sullivan (admitted *pro hac vice*)
Katherine M. Lenahan (admitted *pro hac vice*)
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: rgonnello@faruqilaw.com
        msullivan@faruqilaw.com
        klenahan@faruqilaw.com

Barbara Rohr  SBN 273353
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: 424-256-2884
Facsimile: 424-256-2885
Email:  brohr@faruqilaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 27, 2016, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

By:   */s/ Richard W. Gonnello*
     Richard W. Gonnello
